| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6 | Jody A. Landry, Bar No. 125743<br>jlandry@littler.com<br>LITTLER MENDELSON, P.C.<br>501 W. Broadway, Suite 900<br>San Diego, California  92101.3577<br>Telephone:  619.232.0441<br>Fax No.:      619.232.4302<br><br>Attorneys for Defendant<br>ULTA SALON, COSMETICS &<br>FRAGRANCE, INC. |

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO BEDOLLA, an individual,<br><br>              Plaintiff,<br><br>    v.<br><br>ULTA SALON, COSMETICS &<br>FRAGRANCE, INC., a Delaware<br>Corporation; and DOES 1 through 50,<br>inclusive,<br><br>              Defendants. | Case No. **'22CV1153 W      AHG**<br><br>[Imperial Superior Court Case No. ECU002471]<br><br>**DEFENDANT'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint filed:  July 7, 2022 |

TO THE CLERK OF THE ABOVE-ENTITLED COURT, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant ULTA SALON, COSMETICS & FRAGRANCE, INC. ("Defendant"), hereby removes the state action described herein, filed in the Superior Court of the State of California, County of Imperial, to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. A true and correct copy of this notice will be filed contemporaneously with the Clerk of the Superior Court for the State of California, County of Imperial, and notice of the removal will be provided to counsel for Plaintiff in accordance with 28 U.S.C. § 1446(d). Defendant makes the following allegations in support of its Notice of Removal:

## I. STATEMENT OF JURISDICTION

1. This Court has original jurisdiction over this civil action under 28 U.S.C. § 1332(a), and this action is one that may be removed to this Court pursuant to the provisions of 28 U.S.C. § 1441(b) because Plaintiff RICARDO BEDOLLA ("Plaintiff") is a citizen of the State of California and Defendant is a Delaware corporation with its principal place of business in Illinois. The amount in controversy in this action exceeds $75,000.00.

2. As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

## II. PLEADINGS, PROCESSES AND ORDERS

3. On July 7, 2022 Plaintiff filed a Complaint for Damages ("Complaint") in the Superior Court for the County of Imperial entitled *Ricardo Bedolla v. Ulta Salon, Cosmetics & Fragrance, Inc., Defendants,* Case No. ECU002471 ("State Court Action"). (Declaration of Jody A. Landry ("Landry Decl."), ¶ 2).

4. Plaintiff's Complaint alleges the following causes of action: (1) Failure to Provide Meal Breaks; (2) Failure to Provide Rest Breaks; (3) Failure to Pay Wages; (4) Failure to Pay Overtime; (5) Failure to Provide Accurate Itemized Wage Statements;

(6) Violation of Business & Professions Code §§ 17200-17208; (7) Retaliation in Violation of the Fair Employment and Housing Act ("FEHA"); (8) Discrimination in Violation of FEHA; (9) Failure to Prevent Harassment; (10) Hostile Work Environment; and (11) Wrongful Termination in Violation of Public Policy.

5. On July 8, 2022, Plaintiff served Defendant with the Summons and Complaint, with corresponding exhibits, and the Civil Case Cover Sheet. (Landry Decl., ¶ 3).

6. Attached hereto as **Exhibit A** is a true and correct copy of the Summons and Complaint with exhibits, along with the Civil Case Cover Sheet and Notice of Confirmation of Filing. (*Id.*)

7. Attached hereto as **Exhibit B** are the remaining documents reflected on the Imperial County Superior Court website, including Notice of Case Management Conference dated July 8, 2022 and the Notice of Case Management Conference dated July 20, 2022. (Landry Decl., ¶ 4).

8. On August 4, 2022, Defendant filed an Answer to the Complaint in the Imperial County Superior Court and served a copy of that Answer on Plaintiff's counsel of record. (Landry Decl., ¶ 5). Attached hereto as **Exhibit C** is a true and correct copy of Defendant's Answer. (*Id.*)

9. Pursuant to 28 U.S.C. § 1446(d), **Exhibits A-C** constitute all process, pleadings, and orders filed in the State Court Action. To Defendant's knowledge, no other process, pleadings, or orders related to this case have been filed or served by any party in the State Court Action. (Landry Decl., ¶ 6).

10. To Defendant's knowledge, no proceedings related hereto have been heard in the State Court Action and no other parties have been named or served with the Summons and Complaint in the State Court Action. (*Id*)

### III. TIMELINESS OF REMOVAL

11. This Notice of Removal is timely because it is being filed within one year of the initiation of the State Court Action and within 30 days of service of the

Complaint. *See* 28 U.S.C. § 1446(b).

## IV. DIVERSITY JURISDICTION UNDER 28 U.S.C. § 1332

12. The diversity of citizenship statute, 28 U.S.C. §1332(a), provides in relevant part:

> The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between –
>
> (1) citizens of different States. . . .

13. This action is a civil action over which this Court has original jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a) and is one that may be removed to this Court by Defendant pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as set forth below.

### A. Diversity of Citizenship Exists

14. Citizenship of a natural person is established by domicile. A person's domicile is established by physical presence and an intent to remain indefinitely. *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Residence creates a presumption of one's domicile. *District of Columbia v. Murphy*, 314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his domicile until the facts adduced establish the contrary"); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 529 (10th Cir. 1994) (a party's residence is prima facie evidence of his domicile).

15. At the time Plaintiff commenced the State Court Action, and at the time of removal, Plaintiff was a resident of the State of California. (*See* Exhibit A, Complaint, ¶ 1 ("At all relevant times Plaintiff, RICARDO BEDOLLA, was and is an individual who resides in the State of California.")). Further, based on Plaintiff's July 7, 2021 Right to Sue Notice from the Department of Fair Employment and Housing ("DFEH"), Plaintiff's residence is located in Holtville, California, a city within Imperial County, California. (*See* Exhibit A, Complaint's attached exhibit). Thus, Plaintiff is a citizen

4855-2201-0923.1 / 059310-1212

LITTLER MENDELSON, P.C.
501 W. Broadway  Suite 900
San Diego  CA  92101.3577
619.232.0441

4

of the State of California for diversity jurisdiction purposes. *See* 28 U.S.C. § 1332(a)(1) (an individual is a citizen of the state in which he or she is domiciled).

16. For diversity jurisdiction purposes, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), "the phrase 'principal place of business' [in Section 1332(c)(1)] refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities. Lower federal courts have often metaphorically called that place the corporation's 'nerve center.' We believe that the 'nerve center' will typically be found at a corporation's headquarters." *Id.* at 80-81; *see also Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed).

17. Defendant is a Delaware corporation with its principal place of business located in Bolingbrook, Illinois. (Declaration of Holly Moorehouse ("Moorehouse Decl.") ¶ 3). Defendant's corporate headquarters and high level executives are located in Bolingbrook, Illinois, including but not limited to Defendant's Choice Executive Officer, Chief Financial Officer, President, and Chief Information Officer. (*Id.*) Although Defendant conducts business in multiple states, its business is coordinated through its headquarters in Bolingbrook, Illinois, including making final decisions regarding all corporate-wide issues, such as decisions related to its operations, policies, legal matters, contracts, purchasing, public affairs, revenue management, advertisement and marketing. (*Id.*) Accordingly, Defendant was not a citizen of the State of California at the time the State Court Action was filed and is not a citizen of the State of California now. Rather, for purposes of removal jurisdiction Defendant was and is a citizen of both the State of Delaware and the State of Illinois.

18. Plaintiff's Complaint also names as Defendants "Does 1-50." Pursuant to 28 U.S.C. § 1441(b)(1), the citizenship of defendants sued under fictitious names must

LITTLER MENDELSON, P.C.
501 W. Broadway Suite 900
San Diego CA 92101.3577
619.232.0441

be disregarded for the purpose of determining diversity jurisdiction. Further, to Defendant's knowledge, no fictitious defendant has been served; thus, none need join in the Notice of Removal. *See Salveson v. Western States Bankcard Assoc.*, 731 F.2d 1423, 1429 (9th Cir. 1984) ("Our circuit rule is that a party not served need not be joined; the defendants summoned can remove by themselves.").

19. Accordingly, the named Plaintiff is a citizen of a state (California) different from Defendant (Delaware and Illinois), and diversity exists pursuant to 28 U.S.C. 1332(a).

### B. The Amount In Controversy Is Satisfied

20. For purposes of determining whether the minimum amount in controversy has been satisfied, the Court must presume that a plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). "[T]he amount in controversy is not limited to damages incurred prior to removal," such as "wages a plaintiff-employee would have earned before removal (as opposed to after removal)" but instead "encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F. 3d. 413, 414-415 (9th Cir. 2018). Defendants need only to establish by a preponderance of evidence that a plaintiff's claims exceed the jurisdictional minimum. *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). By demonstrating that the actual amount in controversy placed at issue by a plaintiff exceeds the $75,000 threshold, defendants do not concede the validity of a plaintiff's claims, the legal bases for the damages calculations, or the likelihood that a plaintiff will recover anything.

21. The notice of removal need only contain a "short and plain statement of the grounds for removal." *Dart Cherokee Basin Operating Co. v. Owens,* 135 S. Ct. 547, 551 (Dec. 15, 2014) (citing 28 U. S. C. §1446(a)). Moreover, defendants need not submit evidence to support their notice of removal. *Id*. at 553. Defendants need to only

plausibly allege that the amount in controversy exceeds $75,000. *Id.* ("the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court"). However, even if an evidentiary showing were required, defendants only need to show by a preponderance of the evidence that the amount-in-controversy requirement has been met. *Id.* at 554.

### 1. Plaintiff's written settlement demand seeks well over $75,000 in damages.

22. Where grounds for removal do not appear on the face of the initial pleading, a defendant can also look to "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3); *see also Lovern v. General Motors Corp.*, 121 F. 3d 160, 161 (4th Cir. 1997) (courts may look to "documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal").

23. A written settlement demand can constitute "other paper" within the meaning of 28 U.S.C. § 1446(b) if it appears to reflect a reasonable estimate of the plaintiff's claim. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (court noted that the settlement demand letter was sufficient to establish the amount in controversy); *Arellano v. Home Depot, U.S.A., Inc.*, 245 F. Supp. 2d 1102, 1108 (S.D. Cal. 2003) (explaining that "if damages are not clearly specified in the pleadings, the court may rely upon a variety of documents, including written settlement demands" to determine diversity).

24. In this case, on October 17, 2020, Plaintiff sent Defendant a written settlement demand ("Settlement Demand") indicating Plaintiff would agree to resolve the matter for an amount that well exceeded $75,000. (Moorehouse Decl., ¶ 4, Exhibit 1). Plaintiff's settlement demand is sufficient to establish that the amount in controversy exceeds the jurisdictional minimum. *Babasa v. LensCrafters, Inc.*, 498 F.3d 972, 974-75 (9th Cir. 2007) (*citing to Cohn*, 281 F.3d at 840 ("[a] settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable

estimate of the plaintiff's claim").

25. Accordingly, although Defendant disputes that Plaintiff is entitled to any relief, the demand sufficiently establishes the amount in controversy for purposes of removal.

### 2. The allegations in Plaintiff's Complaint demonstrate that Plaintiff's claims well exceed $75,000.

26. In an abundance of caution, even if Plaintiff had not made a settlement demand in excess of $75,000, Defendant can easily establish by a ***preponderance of evidence*** that Plaintiff's claims exceed the jurisdictional minimum.[1] *See* 28 U.S.C. § 1332(a); *Singer,* 116 F.3d at 376; *Sanchez*, 102 F.3d at 404.

27. Economic damages, non-economic damages, general damages, attorneys' fees and costs and punitive damages are all included in determining the amount in controversy. *See Anthony v. Security Pacific Financial Services, Inc.*, 75 F.3d 311, 315 (7th Cir. 1996) (prayer for punitive damages included in determining amount in controversy); *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998) (prayer for attorneys' fees included in determining the amount in controversy where potentially recoverable by statute). The Court may examine the nature of the action and the relief sought and take judicial notice of attorneys' fee awards in similar cases. *See, e.g., Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting that attorneys' fees in individual employment discrimination cases often exceed damages). Furthermore, such fees are calculable beyond the time of removal. *Id.*

28. **Compensatory Damages**: Plaintiff's First, Second, Third, Fourth, Fifth, Seventh, Eighth, Tenth, and Eleventh Causes of Action seek compensatory damages for alleged violations of the FEHA and the California Labor Code. Plaintiff's Complaint alleges that he "has suffered, and continues to suffer, significant economic loss and damages." (*See, e.g.,* Exhibit A, Complaint ¶¶ 40, 44, 67, 93, 118, 158, 168, 178, Prayer

---

[1] Defendant generally and specifically denies Plaintiff's allegations in the Complaint and denies that Plaintiff is entitled to damages in any amount.

4855-2201-0923.1 / 059310-1212

for Relief, ¶ 13). In employment disputes, such as here, in addition to lost wages already accrued at the time of removal, the amount in controversy also includes additional back pay following removal and courts alleged future lost wages. *Kroske v .U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005); *see also James v. Childtime Childcare, Inc.*, No. S-06-2676, 2007 WL 1589543, *2 n.1 (E.D. Cal., June 1, 2007) ("The court evaluates the amount in controversy at the time of removal, but it may consider both past and future lost wages.").

29. In his Settlement Demand, Plaintiff alleges that he began working for Defendant on January 8, 2018 and Defendant terminated his employment on August 7, 2020. (*See* Moorehouse Decl., Exhibit 1). In his Settlement Demand, Plaintiff claims that at the time his employment with Defendant ended, he earned $29.11 per hour and worked about 60 hours per week, on average. (*Id.*) Therefore, pursuant to Plaintiff's claims in his Settlement Demand, if Plaintiff were to recover back wages from the date of separation to the date of removal (i.e. approximately 104 weeks), he could potentially recover **$181,646.40** ($29.11/hour x 60 hrs/week x 104 weeks) – with that amount growing as this case progresses. This amount does not consider overtime, benefits or any incentive pay.

30. In addition, Plaintiff's lost earnings allegations do not contain a limit in their temporal scope. Front pay awards in California frequently span a number of years. *See, e.g., Smith v. Brown-Forma Distillers Corp.*, 196 Cal. App. 3d 503, 518, 241 Cal. Rptr. 916 (1989) (front pay until mandatory retirement age reached); *Rabago- Alvarez v. Dart Indus.*, Inc., 55 Cal. App. 3d 91, 97-98 (1976) (four years); *Drzewiecki v. H&R Block, Inc.*, 24 Cal. App. 3d 695, 705 (1972) (ten years). Even conservatively estimating that Plaintiff seeks front pay benefits for only one year, the amount of future wages in controversy in this case would total at least an additional **$90,823.20**.[2]

---

[2] Some of what is characterized as "front pay" herein would necessarily be "back pay" at the time of adjudication of Plaintiff's claims. *Lowe v. California Resources Agency*, 1 Cal. App. 4th 1140, 1144 (1991)("(B)ack pay refers to the amount that plaintiff would have earned but for the employer's unlawful conduct, minus the amount that plaintiff did earn or could have earned if he or she had mitigated the loss by seeking or securing

31. As such, Plaintiff's claims for lost wages, without more, more than satisfy the amount in controversy requirement to establish federal diversity jurisdiction and Defendant has more than satisfied the minimal preponderance of evidence standard.

32. **General Damages.** Plaintiff also alleges he suffered "general damages" for alleged "severe emotional distress" and "psychological and emotional injury." (*See, e.g.,* Exhibit A, Complaint ¶¶ 11, 20, 94, 119, 131, 147, 158, 160, 169, 177, Prayer for Relief, ¶ 4). Plaintiff's potential recovery of such damages further augments the foregoing amount in controversy calculations and demonstrates that the jurisdictional prerequisite for removal of this action is met. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (holding that emotional distress damages are included in determining amount in controversy); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (plaintiff's claims for pain and suffering and humiliation may properly be factored into jurisdictional analysis for purposes of removal); *see also Richmond v. Allstate Ins. Co.*, 897 F. Supp. 447, 450 (S.D. Cal. 1995) (noting that emotional distress damages, although vaguely pled, were potentially substantial); *Simmons*, 209 F. Supp. 2d at 1033-34) (acknowledging that while plaintiff was only employed by the defendant for four months, "emotional distress damages in a successful employment discrimination case may be substantial"); *Conrad Assocs. v. Hartford Acc. & Indem. Co.*, 994 F. Supp 1196, 1198 (N.D. Cal. 1998); *Velez v. Roche*, 335 F. Supp. 2d 1022, 1038-40 (N.D. Cal. 2004) (surveying discrimination and harassment cases awarding emotional distress damages and concluding that "substantial jury awards of hundreds of thousands of dollars for non-economic damages have been upheld where there is evidence. . . that the plaintiff suffered heightened mental anguish")

33. In *Kroske*, *supra*, the Ninth Circuit upheld the lower court's finding that

---

other comparable employment."); *Pollard v. E.I. du Pont de Nemours & Co.* 532 U.S. 843, 853 (2001)("A front pay…award is the monetary equivalent of the equitable remedy of reinstatement"). Whether alleged lost wages for the months between the filing of Plaintiff's Complaint and trial is characterized as a "back pay" or "front pay" remedy, the total amount in controversy related to alleged wage loss remains the same.

4855-2201-0923.1 / 059310-1212

the amount in controversy had been established. In reaching its holding, the Ninth Circuit reasoned that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" where she had $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Kroske*, 432 F.3d at 980. In cases alleging retaliation and harassment, awards of double the amount of compensatory damages for emotional distress are not uncommon. For example, in *Navarro v. DHL Global Forwarding*, JVR No. 1708160028, 2017 WL 3503541 (C.D. Cal.), the jury returned a $765,000 emotional distress verdict in addition to the $765,000 award in past and future lost income. Moreover, in *Greta L. Anderson v. American Airlines Inc.*, 2008 WL 3166832 (N.D. Cal.), a plaintiff alleging retaliation and harassment, among other FEHA claims, was awarded $1,000,000 in noneconomic/personal injury damages despite suffering $238,333 in lost income.

34. Thus, using the *Kroske* "formula" as a conservative baseline, the emotional distress component of Plaintiff's claims could add **$25,000** to the amount in controversy, if not much more.

35. **Punitive Damages.** Punitive damages are also included in calculating the amount in controversy if they are recoverable under state law. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); s*ee also Richmond v. Allstate Ins. Co.*, 897 F. Supp 447, 450 (S.D. Cal. 2003). In his Complaint, Plaintiff alleges that he is entitled to punitive damages against Defendant. (*See, e.g.,* Exhibit A, Complaint ¶¶ 97, 122, 179; Prayer for Relief, ¶ 6). If Plaintiff successfully establishes these allegations, he may be entitled to recover punitive damages under California Civil Code § 3294. California law does not provide monetary limitations on the amount of punitive damages that may be awarded under said statute. Rather, the proper amount of punitive damages is determined based on the reprehensibility of a defendant's misdeeds, the ratio between compensatory and punitive damages, and the ratio between damages and a defendant's net worth. *Boyle v. Lorimar Productions, Inc.*, 13 F.3d 1357, 1359-

60 (9th Cir. 1994).

36. Although Defendant vigorously denies Plaintiff's allegations, if Plaintiff were to prevail on his claims, the punitive damages alone could exceed the jurisdictional minimum. Numerous court decisions and jury verdicts in the Ninth Circuit demonstrate that compensatory and punitive damages in excess of $75,000 have been awarded to individual plaintiffs where, as here, the plaintiff alleges harassment, failure to prevent harassment, and retaliation. For example, in *Sharon Paterson v. California Department of General Services, Raymond Asbell and Inter-Con Security Systems, Inc.*, 2008 WL 1901846 (E.D. Cal. 2008), the jury awarded plaintiff $4,137,500 in punitive damages based upon claims of sexual harassment and retaliation brought under the FEHA and Title VII. In *Doe v. City and County of San Francisco*, 2012 WL 4503915 (N.D. Cal.), the jury awarded $150,000 in punitive damages where plaintiff alleged sexual harassment, failure to prevent harassment and retaliation, among other claims.

37. Therefore, it is reasonable to assume that at least an equal amount to his lost wages claim, **$272,469.60** ($181,646.40 plus $90,823.20) is in controversy with respect to Plaintiff's claim for punitive damages.

38. **Plaintiff's Claim for Meal and Rest Break Premiums:** In his First and Second Causes of Action, Plaintiff alleges that Defendant failed to provide Plaintiff meal and rest breaks in compliance with California law and seeks damages pursuant to Labor Code § 226.7. (Exhibit A, Complaint ¶¶ 34-44, Prayer for Relief, ¶ 1). An employee denied meal periods may be entitled to an additional hour's wages per day for failure to provide meal periods and an additional hour's pay per day for failure to provide rest periods. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting that Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day). The statutory period for recovery for a Labor Code § 226.7 claim pursued with a Business & Professions Code claim is four years. *See* Cal. Civ. Proc. Code § 338(a) (setting out a three-year limitations period); Cal. Bus. & Prof. Code § 17208 (explaining the three-year

statute of limitations can be extended to four years through the pleading of a companion claim under the UCL).

39. In his Settlement Demand, Plaintiff alleges that he missed 675 meal periods and 675 rest breaks. (*See* Moorehouse Decl., Exhibit 1). While Defendant denies the validity and merit of Plaintiff's missed meal and rest break claims, for purposes of removal only, if Plaintiff is able to establish that he missed 675 meal periods and 675 rest breaks between January 8, 2018 and August 7, 2020, he could be entitled to recover an additional **$39,298.50** in unpaid meal and rest break premiums (($29.11/hr x 675 missed meal periods = $19,649.25) and ($29.11/hr x 675 missed rest breaks = $19,649.25)).

40. **Plaintiff's Claim for Inaccurate Wage Statements:** In his Fifth Cause of Action, Plaintiff contends that Defendant failed to provide accurate wage statements, in violation of California Labor Code § 226(a). (Exhibit A, Complaint ¶¶ 60-68). Labor Code § 226(e) provides for penalties in the amount of "fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees."

41. While Defendant denies the validity and merit of Plaintiff's inaccurate wage statement claim, for purposes of removal only, if Plaintiff is able to establish his claim for inaccurate wage statements, Plaintiff could recover up to **$4,000** in Labor Code § 226(e) penalties.

42. **Attorney's Fees:** Plaintiff also seeks attorneys' fees. (*See, e.g.,* Exhibit A, Complaint, Prayer for Relief, ¶ 12); *see also, Galt G/S*, 142 F.3d at 1156 (recognizing that "where an underlying statute authorizes an award of attorneys' fees, . . . such fees may be included in the amount in controversy."). In actions brought under the FEHA, the court may award to the prevailing party reasonable attorneys' fees. Cal. Gov't Code § 12965 (b). Specifically, in determining the amount of reasonable attorneys' fees to

be awarded, courts often rely on the lodestar amount—calculated by multiplying the number of hours worked by each person entitled to compensation by the reasonable hourly rate for those activities. *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977).

43. The Ninth Circuit has recently clarified that a reasonable estimate of **future** attorneys' fees may be included in the amount in controversy analysis. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793-796 (9th Cir. 2018). In *Fritsch*, the Ninth Circuit held that "when we assess the amount in controversy at the time of removal, we must include all relief to which a plaintiff is entitled if the action succeeds. Accordingly, if the law entitles the plaintiff to future attorneys' fees if the action succeeds, 'then there is no question that future [attorneys' fees] are 'at stake" in the litigation.'" *Id.* at 794; *see also, Schneider v. Ford Motor Co*., 2018 U.S. App. LEXIS 34965, fn. 4 (9th Cir. Dec. 12, 2018) (*citing, Fritsch,* "The possibility that the putative class members could receive an award of attorneys' fees buttresses our conclusion that the amount in controversy exceeds $5 million.").

44. The attorneys' fees alone through trial of any of Plaintiff's causes of action would likely exceed $75,000.00, and could be many times that amount. Among the many ways to demonstrate prevailing market rates, are the following: (1) declarations from local attorneys (*U.S. v. City & County of San Francisco*, 748 F. Supp. 1416, 1431 (N.D. Cal. 1990)); (2) rates awarded to the claiming attorneys in previous actions (*Margolin v. Regional Planning Comm'n*, 134 Cal.App. 3d 999 (1982)); and (3) rates awarded to attorneys of comparable experience in other cases in the same market. (*Id.*).

45. Moreover, attorneys' fees awards in employment matters often exceed $75,000. *See, e.g., Flannery v. Prentice*, 26 Cal.4th 572 (2001) (California Supreme Court upheld an award of attorneys' fees under Fair Employment and Housing Act ("FEHA") for $891,042); *Akers v. County of San Diego*, 95 Cal.App.4th 1441 (2002) (lower court awarded $249,349 in attorneys' fees in wrongful termination in violation of public policy and discrimination case); *Hackmon v. City of Los Angeles*, 2001 WL 1860540 (Cal. Superior) ($114,484 awarded in discrimination case brought under the

1  FEHA); *Kohn v. County of Los Angeles*, 2001 WL 1720226 (Cal. Superior) (awarding
2  $161,700 in attorneys' fees in FEHA discrimination case).  Thus, an attorneys' fees
3  award in this case could easily reach or exceed $75,000.

4  46. **Summary of Amount In Controversy:** Without even considering Plaintiff's claims for failure to pay wages and failure to pay overtime wages[3], Plaintiff's purported damages are as follows:

| Plaintiff's Claim | Amount in Controversy |
|---|---|
| Back Pay | $181,646.40+ |
| Front Pay | $90,823.20+ |
| Emotional Distress | $25,000.00+ |
| Meal and Rest Break Premiums | $39,298.50 |
| Inaccurate Wage Statements | $4,000.00 |
| **Total** | **$340,768.10 + attorneys' fees + potential punitive damages** |

47.  In sum, although Defendant does not concede Plaintiff's claims have any merit, when the relief sought by Plaintiff is taken as a whole, the amount in controversy for Plaintiff's claims more likely than not far exceeds the $75,000 jurisdiction requirement, even without considering Plaintiff's claims for failure to pay wages and failure to pay overtime wages, attorneys' fees, interests, costs and claimed punitive damages.  Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

---

[3] Plaintiff's Prayer for Relief claims penalties pursuant to Labor Code § 203. (*See* Landry Decl., Exhibit A, Complaint, Prayer for Relief ¶ 7). However, Plaintiff does not include a cause of action alleging a violation of Labor Code § 203 in his Complaint.

## V. VENUE

48. Plaintiff originally brought this action in the Superior Court of the State of California, County of Imperial. Therefore, venue lies in the Southern District of California, pursuant to 28 U.S.C. §§ 84(d), 1441(a), and 1446(a).

## VI. NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

49. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be provided to Plaintiff's counsel of record Rick Martin, Angel City Law P.C., Los Angeles, CA 90015. (*See* Landry Decl., ¶ 7).

50. A copy of this Notice of Removal will also be filed with the Clerk of the Superior Court of the County of Imperial. *(See id.)*

WHEREFORE, having provided notice as required by law, the above-entitled action should hereby be removed from the Superior Court of the County of Imperial to this Court.

Dated:  August 5, 2022          LITTLER MENDELSON, P.C.

                                */s/ Jody A. Landry*
                                Jody A. Landry

                                Attorneys for Defendant
                                ULTA SALON, COSMETICS &
                                FRAGRANCE, INC.

4855-2201-0923.1 / 059310-1212